IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SCHÜTZ CONTAINER SYSTEMS, INC., and PROTECHNA S.A.<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>MAUSER CORP. and<br>NATIONAL CONTAINER GROUP, LLC,<br><br>　　　　　Defendants. | )<br>)<br>)　Civil Action No. 09cv03609-RWS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS MAUSER CORP. AND NATIONAL CONTAINER GROUP, LLC'S MOTION TO STRIKE PLAINTIFFS' DOCTRINE OF EQUIVALENTS INFRINGEMENT CONTENTIONS**

One of the purposes of the Patent Local Rules is to ensure early and complete disclosure of the parties' positions to allow for the fair and efficient litigation of patent cases and to promote judicial economy. Plaintiffs' Infringement Contentions comply with neither the letter nor the spirit of those rules. Instead—despite having had the accused product in their possession for nearly two years—Plaintiffs Schütz Container Systems, Inc. and Protechna S.A. ("Plaintiffs") included boilerplate and meaningless contentions purporting to disclose a theory of infringement under the doctrine of equivalents. Courts around

the country have reviewed nearly identical contentions, have found them insufficient, and have refused to allow patentees another bite at the apple through amendment or supplementation. Defendants Mauser Corp. and National Container Group, LLC ("NCG") (together, "Defendants") respectfully ask the Court to do the same here by striking Plaintiffs' doctrine of equivalents infringement "contentions" and precluding Plaintiffs from seeking doctrine of equivalents discovery or presenting a doctrine of equivalents theory at trial, in any expert reports, or in any dispositive motions.

## I.   BACKGROUND

This case involves "rebottled" intermediate bulk containers ("IBCs") containing an outer cage made by Plaintiff Schütz and replacement inner containers (also called "bottles") made by Defendant Mauser. Because the cage and bottle come from different manufacturers, these IBCs are commonly called "cross-bottled."

Defendant NCG and its predecessor have been openly selling and offering for sale rebottled and cross-bottled IBCs in the United States since 2001. (Def. NCG's Resp. to Pls.' Interrog. No. 2, Exhibit A.) Beginning in 2003, NCG also provided reconditioned IBCs containing Schütz cages to a major customer of Schütz as part of an agreement between Schütz and Schütz's customer, and during

that time, purchased no replacement bottles from Schütz despite the obvious need to replace original bottles as they become unusable over time. (*Id.* at Resp. to Interrog. Nos. 5 and 10.). Nonetheless, Plaintiffs claim that they first learned that NCG and/or Mauser were selling the cross-bottled IBCs accused of infringement "in April 2007, when a cross-bottled IBC with a Schütz outer cage, Mauser inner container, and a NCG label was shipped to a subsidiary of Plaintiff [Schütz]." (Pls.' Resp. to Defs.' Interrog. No. 9, Exhibit B.) While the evidence is likely to show that Plaintiffs either knew or should have known of Defendants' sale of accused cross-bottled IBCs long before April 2007, for the purposes of this motion, Defendants will not dispute Plaintiffs' April 2007 assertion.

By July 19, 2007, Plaintiffs had conducted an analysis of an actual accused product, as indicated by a letter to NCG from Plaintiffs' counsel:

> We have recently examined used hybrid, or composite, intermediate bulk containers ('IBCs') that have been reconditioned and resold by National Container Group ('NCG'). These IBCs consist of metal grid cages manufactured and originally sold by Schütz. . . . However, the cages contain replacement rigid plastic bottles . . . manufactured by third parties such as Mamor and/or NCG's parent company Mauser. . . . ***Close inspection also reveals that the replacement bottles were not designed to fit within the Schütz cage.***

(Docket No. 15-2, at 2-3 (emphasis added).)  While Plaintiffs raised only trademark issues in their July 19, 2007 letter and related correspondence, and

3

failed to raise any patent issues, the letter clearly indicates that Plaintiffs had an accused product in their possession and had conducted a "close inspection."

On December 23, 2009, long after Plaintiffs acquired and analyzed an accused product, Plaintiffs filed their Complaint in this case, claiming Defendants' cross-bottled IBCs infringe the asserted patent. (Docket No. 1.) Plaintiffs' Complaint is silent on whether Plaintiffs allege literal infringement, infringement under the doctrine of equivalents, or both. Similarly, Plaintiffs provided no detail in the parties' Joint Preliminary Report and Discovery Plan regarding which infringement theories Plaintiffs would be asserting against Defendants. (Docket No. 19.)

On March 31, 2010—two years after Plaintiffs first acquired a sample accused product and, by their own admission, conducted a "close inspection" of the product—Plaintiffs served their Disclosures of Infringement Contentions against each Defendant. (Exhibits C and D.) In their contentions, Plaintiffs merely state that they are asserting infringement under the doctrine of equivalents. In fact, the entirety of Plaintiffs' disclosure of any doctrine of equivalents theory in Plaintiffs' Infringement Contentions is:

> To the extent any element of any asserted claim is deemed not to be literally infringed, Plaintiffs allege that

> such elements are infringed under the doctrine of equivalents.

(*Id.* at ¶ 4.) Thus, despite having had at least two years to inspect an accused product and develop a doctrine of equivalents theory, Plaintiffs provided no doctrine of equivalents analysis whatsoever, let alone a limitation-by-limitation analysis as required by the Patent Local Rules. In fact, Plaintiffs provide no basis at all for claiming infringement under the doctrine of equivalents.

## II. ARGUMENT

### (A) Plaintiffs' Boilerplate Reservation of Rights Does Not Comply with the Patent Local Rules

Patent Local Rule 4.1(b)(4) requires patentees to disclose "[w]hether each element of each asserted claim is claimed to be literally present, present under the doctrine of equivalents, or both, in the Accused Instrumentality." LPR 4.1(b)(4). As a court in this District has stated previously:

> The Patent Local Rules require the disclosing party to include very specific information. . . . This purpose is undermined when parties are permitted to make initial 'place holder' disclosures regarding infringement or invalidity, then make[] substantial changes or additions to those contentions immediately prior to or after the close of fact discovery.

*See ChemFree Corp. v. J. Walter, Inc.*, 250 F.R.D. 570, 573 (N.D. Ga. 2007) (granting motion to strike references disclosed in proposed amended invalidity contentions).

5

Further, the Northern District of California, on whose local patent rules this District's Patent Local Rules are based, *see ChemFree*, 250 F.R.D. at 572 n.3, has rejected contentions ***virtually identical*** to those served by Plaintiffs as contrary to the letter and spirit of the infringement contention requirement and insufficient to permit the patentee to pursue a doctrine of equivalents theory:

> The Patent Local Rules governing these cases require a patentee to disclose '[w]hether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality.' Rambus's Final Infringement Contentions fall far short of this requirement with respect to the doctrine of equivalents. . . . ***Rambus's sole recognition of this duty is to note that '[t]o the extent that any limitation is found to be not literally present, Rambus asserts that such limitation is present under the doctrine of equivalents.'*** The Patent Local Rules require a limitation-by-limitation analysis, not a boilerplate reservation. The doctrine of equivalents exists to prevent 'a fraud on the patent.' It is not designed to give a patentee a second shot at proving infringement '[t]o the extent that any limitation is found to be not literally present.' Rambus's failure to comply with the Patent Local Rules . . . . provides ample, alternative justification for dismissing Rambus's claims of infringement under the doctrine of equivalents.

*Rambus Inc. v. Hynix Semiconductor Inc.*, Nos. C-05-00334 RMW, C-05-02298 RMW, 06-00244 RMW, 2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008) (citations omitted) (emphasis added).[1]

Like the parties in *Rambus* and *ChemFree*, Plaintiffs have simply included boilerplate, place-holder language in an apparent attempt to reserve their "rights" to bring doctrine of equivalents claims later in the litigation. *Rambus*, 2008 WL 5411564, at *3; *ChemFree*, 250 F.R.D. at 573. These generic contentions are useless to Defendants in conducting discovery, developing claim construction positions, and generally developing their case. Plaintiffs' contentions fail even to identify the claim limitations for which Plaintiffs are asserting doctrine of equivalents infringement, let alone the specific aspects of the Accused Instrumentalities that are allegedly equivalent to those limitations or Plaintiffs' theory of why those aspects are equivalent. *See ChemFree,* 250 F.R.D. at 573 ([C]ontentions "serve a function far more important than the mere identity and

---

[1] While an earlier Northern District of California case has stated, regarding similar contentions, that "the Court is sympathetic to defendants' argument that plaintiffs' [boilerplate doctrine of equivalents] contentions provide little helpful information, they do comply with the letter of the Local Rules[,]" *Keithly v. The Homestore.com, Inc.*, 553 F. Supp. 2d 1148, 1151 (N.D. Cal. 2008), that precedent pre-dates the *Rambus* decision. Moreover, the *Rambus* decision more closely comports with the decisions of this District regarding the purpose of the Patent Local Rules: to ensure the early and detailed disclosure of the parties' positions and to eliminate gamesmanship. *See ChemFree*, 250 F.R.D. at 573.

disclosure of potentially relevant evidence: they explain exactly *how* the opposing party will use that evidence . . . .") (emphasis in original).

In addition to the standard of detail required of Plaintiffs' Infringement Contentions under the Patent Local Rules, the Federal Circuit requires a high level of evidentiary specificity to support a doctrine of equivalents theory. A patentee arguing a doctrine of equivalents theory must present, "on a limitation-by-limitation basis, particularized testimony and linking argument as to the insubstantiality of the differences" between the accused product and what was literally claimed by the patentee. *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1382 (Fed. Cir. 2009). "Evidence and argument on the doctrine of equivalents cannot merely be subsumed in plaintiff's case of literal infringement." *Id.*

While Plaintiffs are not required to present infringement contentions marshalling every piece of available evidence that would be presented at trial, both the Patent Local Rules, and by extension, Federal Circuit precedent on the substantive law of doctrine of equivalents, require a disclosure more detailed and specific than "[t]o the extent any element of any asserted claim is deemed not to be literally infringed, Plaintiffs allege that such elements are infringed under the doctrine of equivalents." (Exhibits C and D, at ¶ 4.) Allowing plaintiffs to pursue

doctrine of equivalents claims in discovery and at trial based solely on conclusory infringement contention language that fails to disclose equivalents contentions on a limitation-by-limitation basis would render the infringement contentions requirement of the Patent Local Rules effectively meaningless. *See ChemFree*, 250 F.R.D. at 573. Therefore, the Court should strike Plaintiffs' doctrine of equivalents contentions.

> **(B)  Plaintiffs Should Not Be Permitted to Amend or Supplement Their Contentions on Doctrine of Equivalents**

While decisions on local patent rules contemplate the possibility of amendment or supplementation of infringement contentions, courts addressing such motions have consistently held parties to a rigorous standard and have not hesitated to deny such motions. *See ChemFree*, 250 F.R.D. at 572-73 (requiring a movant to show "substantial justification for [the] delay"). To succeed on a motion to amend or supplement, a party must first show, in addition to other things, that it acted with diligence in reviewing the available evidence. *See id.*; *O2 Micro Int'l. Ltd v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) ("Thus, we reject O2 Micro's apparent argument [under N.D. Cal. local patent rules] that 'good cause' must exist for amending its infringement contentions, without regard to its diligence in doing so, merely because new evidence was revealed during discovery."); *Network Appliance Inc. v. Sun*

9

*Microsystems Inc.*, Nos. C-07 06053 EDL, C-07 05488 EDL, 2009 WL 2761924, at *2-3 (N.D. Cal. Aug. 31, 2009) (denying motion for leave to amend contentions where party was not diligent in seeking the discovery or reviewing the available evidence that formed the basis of the newly proposed theories); *Sybase, Inc. v. Vertica Sys., Inc.*, No. 6:08 cv 24, 2009 WL 4574690, at *2-3 (E.D. Tex. Nov. 30, 2009) (finding five-to-six month delay in reviewing source code was not reasonable and denying leave to amend infringement contentions); *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08cv144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009) (denying motion for leave to amend infringement contentions to accuse additional products; "[c]ontrary to Plaintiff's argument that it needed to 'confirm' new theories of infringement [with additional discovery beyond information discovered earlier], infringement contentions are intended to frame the scope of the case in order to provide for 'full, timely discovery and [to] provide parties with adequate notice and information with which to litigate their case.'"). In other words, a party cannot ignore the evidence available to it for months, let alone years, and expect an opportunity to amend its contentions later in light of "new" evidence.

Plaintiffs have possessed one or more samples of the accused product since at least April 2007, completed a "close inspection" of the product prior to July 19,

2007, and even concluded that Mauser's bottles "were not designed to fit within the Schütz cage."[2] (Exhibit B; Docket No. 15-2, at 2-3.) Two years was more than sufficient time for Plaintiffs to examine the accused product, compare it to the claim limitations of their own patent, and determine which limitations are met under the doctrine of equivalents and for what reasons. *See ChemFree*, 250 F.R.D. at 573 (denying effort to add prior art references to invalidity contentions where references were cited on the face of the asserted patent and the suit had been filed three years earlier). Moreover, for many limitations, the relevant aspects of the accused cross-bottled IBCs are contained within the cage manufactured **by Schütz**. (Exhibits C and D, at ¶ 2 ("Plaintiffs are aware that cross-bottled IBCs (consisting of a Schütz outer cage and a Mauser inner container) . . . have infringed and continue to infringe [the asserted claims].")).

Given that a delay of five-to-six months to review complicated source code was found to be too long to warrant amendment to infringement contentions, *see Sybase*, 2009 WL 4574690, at *2-3, Plaintiffs' failure to take advantage of far simpler evidence in their possession for four times as long of a time period

---

[2] If the bottle was "not designed to fit within" a Schütz cage, Defendants' cross-bottled IBC's cannot and do not infringe the asserted patent, given the requirement in every asserted claim that the bottle be in "flush accommodation" with the cage and that the cage have a floor plan "adapted to the drainage bottom" of the bottle. This is likely the reason Plaintiffs did not raise any patent issues in their July 19, 2007 letter following their close inspection of the accused product.

demonstrates a lack of diligence and precludes any future amendment based on evidence "discovered" during the litigation.[3]  *See Realtime Data*, 2009 WL 2590101, at *5 (denying motion to amend infringement contentions where patentee had adequate evidence earlier and waited to "confirm" its theories before seeking leave to disclose them).  Defendants should not be required to expend time and resources preparing for the possibility of a future doctrine of equivalents contention added later in the litigation after Plaintiffs have failed to utilize the evidence that has been in their possession for close to two years.

### III.  CONCLUSION

For the foregoing reasons, Defendants respectfully ask the Court to strike Plaintiffs' doctrine of equivalents disclosures from Plaintiffs' Infringement Contentions and preclude Plaintiffs from seeking doctrine of equivalents discovery or presenting doctrine of equivalents evidence at trial, in any expert reports, or in any dispositive motions.

Dated:     April 12, 2010

                                                /s/ *Russell E. Levine*
                                                Robin L. McGrath (Ga. Bar # 493115)
                                                Jennifer Liotta (Ga. Bar # 109528)
                                                ALSTON & BIRD LLP

---

[3] In fact, even the approximately three months since the date Defendants filed suit should have been sufficient for this analysis.

1201 West Peachtree Street
Atlanta, Georgia 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777

Russell E. Levine, P.C. (*pro hac vice*)
Robin A. McCue (*pro hac vice*)
Matthew V. Topic (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200

*Attorneys for Defendants Mauser Corp.
and National Container Group, LLC*

**NORTHERN DISTRICT OF GEORGIA**
**LOCAL RULE 7.1 CERTIFICATION**

I hereby certify that this document has been prepared in Times New Roman 14 point font in accordance with Local Rule 5.1.

Dated:        April 12, 2010

/s/ *Russell E. Levine*
Robin L. McGrath (Ga. Bar # 493115)
Jennifer Liotta (Ga. Bar # 109528)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777

Russell E. Levine, P.C. (*pro hac vice*)
Robin A. McCue (*pro hac vice*)
Matthew V. Topic (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200

*Attorneys for Defendants Mauser Corp.*
*and National Container Group, LLC*

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of April, 2010, I electronically filed MEMORANDUM IN SUPPORT OF DEFENDANTS MAUSER CORP. AND NATIONAL CONTAINER GROUP, LLC'S MOTION TO STRIKE PLAINTIFFS' DOCTRINE OF EQUIVALENTS INFRINGEMENT CONTENTIONS with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following opposing counsel of record:

   Mark V. Campagna (mcampagna@jonesday.com)
   Andrew C. Doherty (acdoherty@jonesday.com)
   William B.B. Smith (wsmith@jonesday.com)
   J. Jason Williams (jjwilliams@jonesday.com)

/s/ *Jennifer Liotta*
Robin L. McGrath (Ga. Bar # 493115)
Jennifer Liotta (Ga. Bar # 109528)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309

Russell E. Levine, P.C. (*pro hac vice*)
Robin A. McCue (*pro hac vice*)
Matthew V. Topic (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

*Attorneys for Defendants Mauser Corp. and National Container Group, LLC*