**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| SCHÜTZ CONTAINER | : | |
| SYSTEMS, INC. | : | |
| | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:09-CV-3609-RWS |
| | : | |
| MAUSER CORPORATION and | : | |
| NATIONAL CONTAINER | : | |
| GROUP, LLC, | : | |
| | : | |
|     Defendants. | : | |

**<u>ORDER</u>**

This case is before the Court for consideration of the following motions:

Plaintiff's Motion to Exclude Putative Expert Testimony from Michael Lasinski

[307]; Defendants' Motion to Exclude the Survey and Testimony of Dr.

Kenneth L. Bernhardt [308]; Defendants' Motion to Preclude Plaintiff From

Offering Evidence, Testimony, and Argument Regarding Defendants'

Reconditioned IBCs [309]; Defendants' Motion to Strike Witnesses that

Plaintiff Did Not Disclose During Discovery and Preclude Plaintiff From

Offering Testimony From Such Witnesses [310]; Defendants' Motion to

Exclude Certain Testimony From Plaintiff's Expert Dr. Sher Paul Singh [311];

and Plaintiff's Motion to Strike and/or Leave to File Sur-Reply Regarding

Defendants' Alleged June 21, 2013 Undertaking With Respect to Washed

Cross-Bottled IBCs [345]. The Court will address each of the Motions in turn.

**Plaintiff's Motion to Exclude Putative Expert Testimony from Michael
Lasinski [307]**

Defendants have proffered Michael J. Lasinski as an expert to offer

opinions regarding the proper costs to be deducted from Defendants' revenues

and to make other proper adjustments, such as apportionment, to determine the

amount of Defendants' profits that Plaintiff would be entitled to recover if it

were to succeed in proving liability. Plaintiff challenges Mr. Lasinski's

testimony as not being helpful to the jury and not being based on a reliable

methodology.

First, Plaintiff asserts that Mr. Laskinski fails to offer an opinion

regarding the costs that should be deducted from Defendants' revenues to

determine its profits. Plaintiff argues that Mr. Laskinski merely suggests "could

be" conclusions that would provide no assistance to the jury.

While it is true that Mr. Laskinski does identify a number of different

costs that could be deducted depending upon the decision of the fact finder, the

AO 72A
(Rev.8/82)

Court finds that he did, in fact, offer his own opinion on the subject. Specifically, he stated his opinion that the appropriate measure of profits to which Plaintiff would be entitled is $514,572.  He also stated the basis for his calculation of that amount.

As a part of Mr. Laskinski's opinion, he relied upon an apportionment factor of 16.7% to identify the portion of Defendants' profits that should be attributed to Defendants' unlawful conduct. In arriving at this percentage, Mr. Laskinski relies upon the testimony of Brett White, Plaintiff's National Sales Manager, and the report of Diana Twede, an expert who was subsequently withdrawn by Defendants. Despite a lack of experience in this area of marketing, Mr. Laskinski essentially combined the testimony of White and Twede and settled on five factors of demand for the product at issue. He then added a sixth factor, the effect of the alleged unlawful activity. Most troublesome, he then attributed equal weight to all six factors in creating his apportionment formula. There is no evidence in the record that supports this calculation. Therefore, the Court finds that the calculation of damages based on this apportionment theory is flawed and is not admissible. Plaintiff's Motion to Exclude Putative Expert Testimony from Michael Laskinski [307] is **GRANTED** as to any testimony based upon his apportionment calculation.

3

**<u>Defendant's Motion to Exclude the Survey and Testimony of Dr. Kenneth L. Bernhardt [308</u>]**

Dr. Kenneth Barnhardt conducted a survey on behalf of Plaintiff regarding the respondents' beliefs about cross bottling. Dr. Bernhardt did not test for the likelihood of confusion for whether consumers were deceived by the accused advertising statements.  In fact, the accused advertisements were not shown to respondents. Defendants assert that because the survey offers no evidence or information on the issues of confusion or deception, it is irrelevant and should not be admitted at the trial. Further, Defendants assert that any probative value of the survey is outweighed by the risk of prejudice to Defendants.

Plaintiff acknowledges that the survey did not directly test broad issues of customer confusion and actual deception caused by Defendants' advertising. However, because Defendants have argued that when their customers buy cross-bottled IBCs bearing the SCHÜTZ mark, the customers appreciate any performance differences between those products and genuine Schütz IBCs, Plaintiff should be permitted to offer Dr. Bernhardt's survey to establish what customers actually believe.  Plaintiff further argues that because the case will not be tried to a jury, concerns about prejudicial effect are reduced.

4

While the Court finds that Dr. Bernhardt's survey has very limited relevance to the issues to be decided by the Court, the Court finds that the survey may, in fact, have some relevance. Because this will be a bench trial, the Court is not concerned about undue prejudice to Defendants arising from the evidence. Therefore, Defendants' Motion to Exclude the Survey and Testimony of Dr. Kenneth Bernhardt [308] is **DENIED**.

**Defendants' Motion to Preclude Plaintiff From Offering Evidence, Testimony, or Argument Regarding Defendants' Reconditioned IBCs [309][1]**

During discovery, Defendants requested from Plaintiff's wholly-owned subsidiary, Cardinal Container, "[a]ll documents related to Cardinal's quality control procedures related to re-conditioned, re-bottled, and/or cross-bottled IBCs." (Defs.' Br. [309], Ex. C). In response to the Request, Cardinal (represented by Plaintiff's counsel) "object[ed] to this request to the extent that

_____

[1] In their Reply Brief, Defendants state for the first time that beginning June 21, 2013, they will place stickers on any IBC comprised of a reconditioned Schütz cage and reconditioned Mauser bottle with language comparable to the "remanufactured NCG" sticker which the Court found in the Summary Judgment Order was sufficient to "preclude any reasonable consumer from claiming confusion as to the source of the IBC." (March 28, 2012 Order [276] at 66). (Reply Br. [332] at 7). Thereafter, Plaintiff filed a Motion to Strike and/or for Leave to File Sur-Reply regarding Defendants' Alleged June 21, 2013 Undertaking With Respect to Washed Cross-Bottled IBCs [345]. Because there remain factual issues regarding the use of the proposed stickers, the Court concludes that their use does not moot the issues raised in Defendants' Motion [309]. These issues will be addressed at the trial of the case. Plaintiff's Motion to Strike and/or for Leave to File Sur-Reply [345] is **DENIED**.

it seeks the disclosure of information that is not relevant to any claim or defense in this action or is not reasonably likely to lead to the discovery of admissible evidence, including information concerning its washing (*i.e.*, re-conditioning) services." (Id., Ex. D). Following receipt of the Response, Defendants sought a clarification from Plaintiff in a November 19, 2010 letter stating:

> Cardinal has objected to discovery regarding its reconditioned IBCs. In light of Cardinal's position, please supplement Plaintiff's Response to Interrogatory No. 18 [seeking Plaintiff's damages positions] (which is the subject of a separate letter) to indicate that none of Plaintiff's claims or alleged injuries are based in any way on reconditioned IBCs (meaning IBCs in which the bottle was not replaced by the seller) sold by Plaintiff, Defendants, or any third parties. If Plaintiff is unwilling to do so, Cardinal's objections are unfounded.

(Id., Ex. F).

> In a related letter on that same date, Defendants also stated:

> Our understanding based on the discovery responses and objections of Plaintiff and of Cardinal is that Plaintiff is basing its damages claims on harm to the sale of rebottled Schütz IBCs by Plaintiff as a result of the alleged infringement and alleged false advertising related to cross-bottled IBCs rebottled and sold by NCG and comprised of a reconditioned Schütz cage and a new Mauser bottle that was placed in the cage by NCG. Defendants' understanding is that no new units or reconditioned units are at issue in this case (*i.e.*, units in which Defendants, Plaintiff, or any third parties have washed out the unit, performed routine maintenance, etc., without replacing the bottle, including any units that were cross-bottled before they were received), and that Plaintiff will not be basing its damages claims on new or

6

> reconditioned units sold by Plaintiff, Defendants, or anyone else.
> Please confirm Defendants' understanding by supplementing
> Plaintiff's response to Interrogatory No. 18 to that effect.

(Id., Ex. G).

On November 29, 2010, Plaintiff responded to Defendants' letters as

follows:

> Your statement that "no new or reconditioned units are at issue in
> this case" is only partially correct. Schütz does not intend to base
> any damages claims on reconditioned IBCs, defined as "IBCs
> having a bottle that was not replaced by NCG (*i.e.*, washed IBCs)."
> However, Schütz will not limit its damages claims further, as
> Defendants' false advertising clearly diminish sales of both new
> and rebottled units from Schütz.

> [and]

> Schütz does not intend to assert damages based on reconditioned
> IBCs, defined as "IBCs having a bottle that was not replaced by
> NCG (i.e., washed IBCs)." Cardinal therefore maintains this
> objection and will not produce documents to the extent they
> exclusively involved reconditioned IBCs as defined above.

(Id., Ex. H and I) Based on this response, Defendants did not pursue their

document discovery into Cardinal's reconditioning procedures.

After the close of discovery, motions for summary judgment were filed.

In a sur-reply brief, Plaintiff acknowledged that it had not included washed

cross-bottled IBCs in its calculation of damages but stated that it had "not

agreed that the sale of such products is otherwise 'not at issue.'" (Pl.'s Br.

[274], at 4, n.2). This statement was made in connection with its argument that the "sale of washed cross-bottled IBCs creates the same likelihood of confusion and requires the same equitable relief as does the sale of Defendants' other cross-bottled IBCs." (Id.). In denying Defendants' Motion for Summary Judgment, the Court found that such evidence was sufficient to create an issue of fact regarding the likelihood of consumer confusion with regard to Plaintiff's trademark infringement claim. (March 28, 2012 Order [276] at 67-69). Based on the position taken by Plaintiff in its Sur-Reply Brief, Defendants filed the present motion seeking to preclude Plaintiff from asserting claims for injunctive relief based on IBCs reconditioned by Defendants.

In its Response, Plaintiff asserts that in spite of its objection to Defendants' discovery requests, it did provide substantial discovery regarding the quality control procedure of Cardinal. (Resp. [325] at 6-8). After a party objects to discovery based upon a disclaimer of claims, that party should not be allowed to reverse that position by simply providing some of the requested discovery. To the extent that Plaintiff represented that it was not asserting claims during discovery, Plaintiff is bound by that position.

The question before the Court is what claims Plaintiffs abandoned. Specifically, Plaintiff stated that it did "not intend to base any damages claims

on reconditioned IBCs." (Defs.' Br. [309], Ex. I). It did not state that it would

not seek injunctive relief based on the reconditioned IBCs. Further, Plaintiff

asserts, and the Court agrees, that Cardinal's practices and procedures are not

relevant to a claim for injunctive relief regarding the reconditioned IBCs. This

claim is based upon Plaintiff's position that the use of a non-Schütz inner

plastic bottle in the IBC results in a likelihood of confusion for the purchaser.

The claim does not rely upon the process by which an entity washes the cross-

bottled IBC. (Resp. Br. [325] at 12). Thus, the discovery at issue would have no

bearing on this claim. The Court concludes that Plaintiff did not abandon a

claim for injunctive relief related to reconditioned IBCs. However, consitent

with the position taken by Plaintiff in discovery, Plaintiff will be precluded

from offering any evidence concerning the washing procedures utilized by

Cardinal or Defendants.

Based on the foregoing, Defendants' Motion to Preclude Plaintiff From

Offering Evidence, Testimony, or Argument Regarding Defendants'

Reconditioned IBCs [309] is **DENIED**.

**Defendants' Motion to Strike Witnesses That Plaintiff Did Not Disclose During Discovery and Preclude Plaintiff From Offering Testimony From Such Witnesses [310]**

When the parties initially exchanged trial witness lists in May 2012, Plaintiff included six witnesses that it had not identified in initial disclosures or supplements thereto as individuals likely to have discoverable information that Plaintiff may use to support its claims. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). Then on April 12, 2013, Plaintiff identified 10 additional new witnesses on its trial witness list that had not been previously disclosed as potential witnesses. Defendants filed the present Motion seeking to exclude these witnesses from testifying at trial. Plaintiff opposes the Motion asserting that it fulfilled its disclosure requirements under the rules for at least 12 of the 16 witnesses by disclosing them as individuals with discoverable information in depositions and responses to Defendants' Interrogatories. (Resp. Br. [326] at 1). Defendants assert that the disclosure of these witnesses during discovery was not adequate because they represent 12 of 274 individuals identified by name in depositions or discovery responses. Thus, Defendants could not have reasonably been expected to identify these witnesses as potential trial witnesses simply because they were named in discovery.

AO 72A
(Rev.8/82)

Rule 26 of the Federal Rules of Civil Procedures requires parties to exchange initial disclosures containing the identity of persons likely to have discoverable information along with the subjects of that information. Fed. R. Civ. P. 26(a)(1). Rule 26(e), moreover, requires the parties to supplement their Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, *and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.*" Fed. R. Civ. P. 26(e)(1)(A)(emphasis added).

The Advisory Committee Notes to the 1993 Amendment to Rule 26(e) provide that there is "no obligation to provide supplemental or corrective information that has otherwise been made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition. . .." *See also* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1 (3d ed. 2010) ("[T]here is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery.")

"If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The non-disclosing party has the "burden of establishing that a failure to disclose was substantially justified or harmless." Mitchell v. Ford Motor Co., 318 F. Ap'x 821, 825 (11th Cir. 2009)

Ojeda-Sanchez v. Bland Farms, LLC, Case No. 608CV096, 2010 WL 2382452,

*1-2 (S.D. Ga. June 14, 2010). The witnesses provided by Plaintiff in May 2012

included former or present employees of National Container Group, Spencer Walker, Wally Ledet, Fred Slemmer, and Anthony Bergman. Plaintiff asserts that it advised Defendants as early as March of 2010 that it intended to rely on individuals employed by Defendants who had information about the "technical, development, testing and certification information concerning products manufactured, developed, re-bottled, cross-bottled and/or offered for sale by Defendants" and "technical, financial, marketing and product management information concerning Defendants re-bottled and/or cross-bottled products." (Resp. Br. [326] at 10). Plaintiff asserts that these 4 witnesses have knowledge about these categories of information and were identified in depositions as possessing such information. (Id. at 11).

The Court has reviewed the citations provided by Plaintiff as being sufficient to put Defendants on notice that these individuals were likely to be witnesses in the case. Based upon that review, Plaintiff will be permitted to call Wally Ledet and Anthony Bergman as witnesses but will no be permitted to call Spencer Walker or Fred Slemmer. As for the remaining two witnesses disclosed in May 2012, Anthony Lima and Phil Pease, the Court finds that sufficient information was not provided as to these witnesses to place Defendants on

notice that they would likely be witnesses as the trial of the case. Therefore, Plaintiff will not be permitted to call these witnesses at trial.

Plaintiff represents that the witnesses added on April 12, 2013 were added for the purpose of authenticating documents to which Defendants had objected in the Pretrial Order. Plaintiff represents that these witnesses are necessary only for the purpose of authenticating documents. The Court finds that Defendants were provided sufficient information regarding Kevin Leddy during discovery to place them on notice that he might be a witness at trial. Therefore, Plaintiff will be permitted to call Mr. Leddy as a witness. However, as to the remaining witnesses disclosed by Plaintiff, those witnesses may be called solely to authenticate documents if Defendants are unwilling to stipulate to authentication.

Based on the foregoing, Defendants' Motion to Strike Witnesses [310] is **GRANTED IN PART** and **DENIED IN PART**.

**Defendants' Motion to Exclude Certain Testimony From Plaintiff's Expert Dr. Sher Paul Singh [311]**

Defendants move the Court to exclude certain aspects of the testimony of Dr. Sher Paul Singh. (Defs.' Br. [311] at 1). Defendants argue that Dr. Singh offered opinions that were not disclosed in his expert reports and that were not

supported by scientific analysis or testing. (Id. at 6). The Court has reviewed the challenged testimony and finds that Defendants' objections go to the weight rather than the admissibility of the testimony. Therefore, Defendants' Motion [311] is hereby **DENIED**.

 **SO ORDERED**, this   31st   day of March, 2014.


 **RICHARD W. STORY**
 United States District Judge

AO 72A
(Rev.8/82)